# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Robert Harsh,
      Petitioner,

    vs.                        Case No. 1:08cv433
                               (Beckwith, S.J.; Black, M.J.)

Warden, Chillicothe Correctional
Institution,
      Respondent.

---

## REPORT AND RECOMMENDATION

---

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, which petitioner has supplemented with additional pleadings and exhibits (Docs. 11, 20, 27, 31, 40); respondent's return of writ with exhibits (Doc. 62); and petitioner's response to the return of writ with exhibits (Doc. 66).[1]

## Procedural Background

On May 25, 2006, the Butler County, Ohio, grand jury returned a four-count indictment in Case No. CR2006-03-0500, charging petitioner with: (1) operating a motor vehicle under the influence ("OVI"), a fourth-degree felony, in violation of Ohio Rev. Code § 4511.19(A)(1)(a), with the specification that "within twenty years of committing the offense, the offender previously has been convicted of or pleaded guilty to five or more equivalent offenses;" (2) possession of marijuana, a "Minor Misdemeanor," in violation of Ohio Rev. Code § 2925.11; (3) driving under OVI suspension, a first-degree misdemeanor, in violation of Ohio Rev. Code § 4510.14(A); and (4) speed limits, a "Minor Misdemeanor," in violation of Ohio Rev. Code § 4511.21. (Doc. 62, Ex. 1).

---

[1] Also pending before the Court are numerous motions filed by petitioner, which will be addressed in a separate Order issued this date. (*See* Docs. 76, 77, 78, 79, 87, 88, 89). Petitioner also has filed three other motions to be addressed by the district judge assigned to this case (Docs. 81, 83, 84), challenging her Order entered on May 12, 2009 (*see* Doc. 80).

Petitioner filed a pretrial motion to suppress, which was denied after hearings held on July 17, December 18, and December 21, 2006. (*See id.,* Exs. 2-3 & Suppression Hearing Transcripts).

On January 23, 2007, the first day of petitioner's trial before a jury, the State filed an entry with the leave of court dismissing the marijuana possession charge. (*Id.,* Ex. 4). Following the trial, the jury entered verdicts of guilt on the OVI count with specification and the driving under OVI suspension charge;[2] the court also found petitioner guilty of the charged speed limits offense. (*See id.,* Exs. 5, 95, 98). A sentencing was held on March 19, 2007, and on March 21, 2007, petitioner was sentenced to consecutive mandatory prison terms of four years for the OVI felony offense and three years on the attached specification. (*Id.,* Ex. 6).[3]

Petitioner's trial counsel filed a timely notice of appeal to the Ohio Court of Appeals, Twelfth Appellate District, on petitioner's behalf. (*Id.,* Ex. 7). Apparently, counsel was appointed to represent petitioner on appeal, but on petitioner's motion, counsel was dismissed and petitioner was allowed to represent himself. (*See id.,* Exs. 8-9). Thereafter, petitioner filed a *pro se* merit brief raising eleven assignments of error to be addressed on appeal:

> 1. The verdict forms were inadequate to support appellant's conviction[] for [OVI] as a fourth degree felony, in violation of appellant's right to due process of law under both federal and State of Ohio Constitutions....

> 2. The trial court erred to the substantial prejudice of appellant when it overruled/denied the ... motion to suppress.

---

[2] In entering the verdict of guilt on the specification attached to the OVI count, the jury specifically found that petitioner had been convicted of driving under the influence in the following seven cases: Franklin County Municipal Court Case Nos. 04 04 TRC 2389 and 03 04 TRC 2213; Miamisburg Municipal Court Case No. 03 TRC 05488A; and Middleton Municipal Court Case Nos. 01 TRC 02378-A, 91 TRC 07295-A, 91 TRC 03330-A, and 90 TRC 01731. (Doc. 62, Ex. 98).

[3] Petitioner also was sentenced to a concurrent six-month prison term for driving under OVI suspension and to "court costs" for the speed limits offense. (Doc. 62, Ex. 6).

3. The trial court abused its discretion when it imposed a seven (7) year prison term upon appellant who had no prior felony arrest & conviction record.

4. Appellant's convictions are against the manifest weight of evidence and are legally insufficient as a matter of federal law.

5. The trial court erred to the prejudice of appellant by sentencing him to a prison term for a first time felony 4 OMVI.

6. Trial counsel was constitutionally ineffective and caused substantial prejudice to appellant during trial.

7. Trial court erred in allowing prosecutorial misconduct[;] ... if not for misconduct[,] outcome of the trial would have been different[,] all violations of ... plain error.

8. Trial court erred in allowing prosecution to admit as evidence illegal altered court documents certified by other court clerks pursuant to ORC 2921.12[;] tampering wi[th] evidence[,] trial court committed plain error....

9. Trial court erred in committing judicial misconduct in violation of Canon Rules 1 through 4.

10. Trial court erred in allowing prosecutor through witness to introduce false misleading evidence as to marijuana as inadmiss[i]ble hearsay evid. Prejudice to appellant depriving of a fair trial a[nd] confrontation g[ua]ranteed by the 6th and 14th Amendments [and] Evid. R. 803.

11. Trial court erred in charging appellant with A.L.S. DUS complaint [in Warren County Case No. 05CR22494]. Plain error....

(*Id.,* Ex. 17).

On February 4, 2008, the Ohio Court of Appeals overruled petitioner's

assignments of error and affirmed the trial court's judgment.  (*Id.,* Ex. 72).

Petitioner timely appealed to the Supreme Court of Ohio; in his memorandum in support of jurisdiction, he asserted thirteen propositions of law:

1.  Substantial compliance with the Ohio Revised Codes ... requires the trial court not to send first time felony D.U.I. offenders to prison especially for seven years mandatory.

2.  Defendant is given ineffective assistance of counsel when counsel pre[-]determines he will not object to anything to allow the trial court to end early and when counsel tells the court his client is stupid and doesn[']t know.

3.  The Constitution and Criminal Rules require the trial court or appeal[s] court to set bond for non[-]violent offenders.

4.  The Rules of Evidence prohibit the trial [court] from allowing a witness to tell the jury he has the tangible evidence at another location and could not bring it to trial.

5.  The Judicial Canon Rules p[r]ohibit a judge from bringing their personal life[']s problems to a jury trial and prejudice the defendant in any way.

6.  The rules of court for nolle prosequi prohibit a prosecutor from dismissing a charge without leave of court and explanation given to the court.

7.  The rules of court prohibit a trial court to sentence the defendant to any felony degree when there is none on the jury verdict forms.

8.  The Constitution prohibits a witness to state probable cause to pull over w[hen] no crime or interfer[e]nce ... have been committed.

9.  The Constitution prohibits a finding of guilty when there is absolutely no

4

evidence of any sort to convict and [it is] against the manifest weight [of evidence].

10.  The Constitution prohibits a citizen to be convicted and sentenced on a charge he was never indicted for or found guilty of.

11.  The Constitution and the O.R.C. prohibit[] a prosecutor from typing up his own prior judg[]ment entr[ie]s of a defendant[']s past driving record.

12.  The Constitution and the O.R.C. prohibit[] the trial court to admit as evidence anything other than a certified official judg[]ment entry signed and journ[a]lized by a court of law.

13.  The Constitution and the Ohio Revise[d] Code should prevent a Twelfth District Court of Appeals to be operated by bias [or] prejudice[,] complete morons of the laws and of the Constitution[,] and to operate a court in total disregard of any case law stated by the Supreme Court or the federal courts.

(*Id.,* Exs. 73, 74).

On June 18, 2008, the Supreme Court of Ohio declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question."  (*Id.,* Ex. 81).

In the meantime, in August 2007, while his direct appeal was pending in the Court of Appeals, petitioner filed a series of *pro se* applications for post-conviction relief with the trial court.[4]  (*See id.*, Exs. 39-41; Ex. 82, p. 2).

On September 4, 2007, the trial court ruled that, excepting one claim, petitioner had raised issues which were barred from review by the doctrine of *res*

---

[4]  In August 2007, petitioner also filed a petition for writ of habeas corpus with the Ohio Court of Appeals, Fourth Appellate District.  (Doc. 62, Ex. 67).  The appellate court dismissed the petition on October 3, 2007, and denied a motion for reconsideration on October 29, 2007. (*Id.,* Exs. 68-69).  On October 18, 2007, petitioner filed a second habeas petition with the Ohio Court of Appeals, Fourth Appellate District, which was dismissed on November 6, 2007.  (*Id.,* Exs. 70-71).  Petitioner did not appeal any of these rulings to the Supreme Court of Ohio.

*judicata* because he had asserted them in "letters and motions in his appeal;" counsel was appointed "to represent defendant on the remaining issue of the post-conviction." (*Id.,* Ex. 44).[5]

Ultimately, counsel was allowed to withdraw from the case while petitioner continued to file *pro se* pleadings. (*See id.,* Exs. 47-48, 51-56, 58-59, 61-64; *see also id.,* Ex. 82, p. 1). On May 21, 2008, the trial court entered a final appealable order denying petitioner's motion for the court to hold a hearing on his post-conviction petition. (*Id.,* Ex. 82).

Specifically, the court ruled in relevant part:

The Trial Court once again overrules defendant's motion for post-conviction relief in that all the issues raised in the motion for post-conviction were raised in the Appellate Court and ruled on by the Appellate Court, and therefore, those issues are *res judicata*.

The two issues that were raised by the defendant that were not directly addressed by the Appellate Court was issue[] number three, the reason [the] microphone recording system was off in the police station police[,] ([Officer] Bost testified that he turned it off once he went into the police station), and issue number six[,] the prosecutor allowed a police officer's wife to remain on the jury. The prosecutor is not obligated to ask the court to excuse a potential juror member that has a relative in law enforcement, unless the juror indicates that he or she cannot be fair and impartial. The defense, through counsel, had an opportunity to exercise a peremptory challenge to dismiss said juror, or if cause was shown[,] to bring it to the court's attention and failed to do so.

(*Id.,* pp. 8-9).

Petitioner apparently did not pursue an appeal from this decision in Ohio's

_____

[5] Apparently, petitioner appealed the trial court's September 4, 2007 ruling to the Ohio Court of Appeals, Twelfth Appellate District. (Doc. 62, Exs. 45-46). On May 12, 2008, the Ohio Court of Appeals affirmed the trial court's judgment. (*See* Doc. 62, Ex. 82, p. 8 & Ex. 92). Respondent states that petitioner did not pursue a further appeal to the Supreme Court of Ohio. (*Id.,* Brief., p. 7).

appellate courts.  (*See id.,* Brief, p. 7).[6]

On November 7, 2007, while he was pursuing his direct appeal and post-conviction remedies in the state courts, petitioner filed a petition for writ of habeas corpus with this Court in the case entitled *Harsh v. Warden, Chillicothe Corr. Inst.,* Case No. 1:07cv920.  In that case, petitioner presented two grounds for relief, alleging (1) that his sentence was unconstitutional, and (2) "malicious abuse of discretion by trial court [and] prosecutor[ial] misconduct."  (Case No. 1:07cv920, Doc. 3, pp. 6-7).  On April 23, 2008, the petition was dismissed without prejudice to refiling after petitioner exhausted his state court remedies.  (*Id.,* Docs. 51-52).

Petitioner initiated the instant habeas corpus action in June 2008.  (*See* Doc. 1).  In his *pro se* petition, filed on July 14, 2008, petitioner asserts ten grounds for relief, which are summarized as follows:

> **Ground One**:  The prison sentence imposed for a "first time felony four ... OMVI" was unauthorized and violated petitioner's constitutional rights to due process and equal protection and to be free from "cruel and unusual punishment."

> **Ground Two**:  Petitioner was denied his constitutional right to the effective assistance of counsel at his trial.

> **Ground Three**:  The evidence was insufficient to support petitioner's conviction under the Fourteenth Amendment's Due Process Clause.

> **Ground Four**:  The prosecutor engaged in misconduct, which deprived petitioner of his due process right to a "fundamentally fair

---

[6] It appears from the record that petitioner instead filed a *pro se* "Motion to Appeal and to Clarify Unconstitutional Judg[]ment Entry" with the trial court on July 31, 2008, which was construed by the court as a petition for post-conviction relief and denied on August 13, 2008 as untimely filed.  (Doc. 62, Exs. 83-84 & 95).  Thereafter, petitioner filed a "Motion Appealing the Entry Overruling Petitioner's Motion to Clarify"on August 26, 2008 with the trial court, followed by a post-conviction motion filed on September 23, 2008 alleging "plain error" under the Double Jeopardy Clause.  (*Id.,* Exs. 85, 89 & 95).  It appears upon review of the Butler County on-line docket records pertaining to petitioner's criminal case that the trial court overruled petitioner's motion filed September 23, 2008 on January 14, 2009.

trial."

**Ground Five**:   Petitioner is "very innocent" of the criminal charges, and the trial was "fundamentally unfair."

**Ground Six**:  Petitioner's constitutional rights to due process and equal protection and under the Double Jeopardy Clause were violated because the "driving under suspension charge was unconstitutional."

**Ground Seven**:  Petitioner's constitutional rights to due process and equal protection were violated because the indictment was "fatally flawed."

**Ground Eight**:  Petitioner's constitutional rights under the Fourth Amendment were violated as a result of his "warrantless search and seizure" in the absence of "probable cause for [the] stop and arrest."

**Ground Nine**:  Petitioner was denied a fair trial due to judicial misconduct.

**Ground Ten**:  Petitioner was denied due process because the jury verdict forms did not comply with state statutory requirements for a felony conviction.

(Doc. 11, pp. 6-14 & Attachment).

## OPINION

### A.  Petitioner Is Not Entitled To Relief Based On His Sentencing-Error Claim Alleged In Ground One Because His Claim Of Error Under Ohio Law Is Not Cognizable, And Any Claim Of Constitutional Error Is Waived

In Ground One of the petition, petitioner essentially alleges that his seven-year prison sentence is unconstitutional, because under Ohio law, "no prison time is authorized for first time felony four ... OMVI" offenses; he contends that any sentence for such offenses with specification is limited to a jail-term in the range of 60 days to one year.  (Doc. 11, p. 6).  Respondent argues in the return of writ that

(1) to the extent petitioner presented this claim on appeal to the state courts as error under state law, the claim is not cognizable in this federal habeas proceeding; and (2) to the extent petitioner seeks relief on the ground that the alleged error in sentencing amounts to a federal constitutional violation, he has waived the claim because he presented the issue to the state courts only in terms of state law. (Doc. 62, Brief, p. 16). Respondent's arguments have merit.

First, as respondent has argued, this Court is precluded from reviewing petitioner's claim to the extent petitioner alleges that the trial court erred under Ohio law in imposing a seven-year prison sentence. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"); *cf. Sneed v. Donahue,* 993 F.2d 1239, 1244 (6th Cir. 1993) (holding that a claim challenging the petitioner's aggregate sentence under state law "involves a matter of state law," which "is not cognizable in a federal habeas corpus proceeding").

Therefore, this Court only has jurisdiction to consider whether the alleged error violated petitioner's constitutional rights. However, as respondent further argues, it appears petitioner has waived any such constitutional claim because he did not raise it to the Ohio courts.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If, because of a procedural default, the petitioner has not had a claim considered by the state's highest court and he can no longer present the claim to

the state courts, he has waived such claim for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error, or that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

It is well-settled that in order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987). This means the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *Franklin,* 811 F.2d at 325 (citing *Koontz v. Glossa,* 731 F.2d 365, 368 (6th Cir. 1984)); *see also Prather v. Rees,* 822 F.2d 1418 (6th Cir. 1987). A claim will be considered "fairly presented" without citation to chapter and verse of the Constitution only if the presentation of the claim was "likely to alert the court to the claim's federal nature." *Nadworny v. Fair,* 872 F.2d 1093, 1097 (1st Cir. 1989) (quoting *Daye v. Attorney General of New York,* 696 F.2d 186, 192 (2nd Cir. 1982) (*en banc*)).

A set of four guidelines has been developed for determining whether a claim was presented in such a way as to alert the court of the claim's federal nature. *Id.* Under these guidelines, a petitioner may fairly present to the state courts the constitutional nature of his claim by (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in similar factual contexts; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans,* 228 F.3d at 681; *Franklin,* 811 F.2d at 326 (quoting *Daye,* 696 F.2d at 193-94).

The use of a "generalized catch-all phrase," which merely alleges the denial of a fair trial under the United States Constitution, does not adequately alert the state courts of the constitutional nature of the claim where the "only legal theory presented to the state courts was predicated entirely upon state . . . law." *Franklin,* 811 F.2d at 326. General statements that the petitioner was denied a "fair trial" and "due process" are not sufficient to put state courts on notice of a specific federal

constitutional claim in the absence of citation to case law employing federal constitutional analysis. *Petrucelli v. Coombe,* 735 F.2d 684, 688-89 (2nd Cir. 1984). Moreover, a state appellate court deciding whether a trial court committed prejudicial error or abused its discretion under state law faces a different legal question than a state court deciding whether the alleged error amounted to a constitutional violation. *See id.* at 690 (citing *Steele v. Taylor,* 684 F.2d 1193, 1206 (6th Cir. 1982), *cert. denied,* 460 U.S. 1053 (1983)).

In this case, petitioner failed to fairly present to the Ohio courts any federal constitutional claim arising from the sentencing error alleged in Ground One of the petition. In his briefs on appeal to both the Ohio Court of Appeals and Supreme Court of Ohio, petitioner's arguments for reversal of his sentence were based solely on state statutory provisions and case-law that did not employ federal constitutional analysis. (*See* Doc. 62, Ex. 17, pp. 7-8, 10; Ex. 74, p. 4).

Specifically, without making even a passing reference to "due process" or his right to a "fair trial," petitioner contended on direct appeal only that (1) the trial court abused its discretion in imposing a seven-year sentence in the absence of any prior felony conviction or physical harm to a person or property resulting from the charged OVI offense; and (2) "[p]ursuant to statute and stare decisis by local appellate jurisdictions within this state, a first time felony offender of OMVI cannot be sent to prison." (*Id.*, Ex. 17, pp. 7-8, 10). On further appeal to the state supreme court, petitioner argued only that "substantial compliance" with Ohio's sentencing statutes "require a trial court not to send a felony four first offender to prison." (*Id.,* Ex. 74, p. 4).[7]

The Ohio Court of Appeals was the only state court to address the merits of petitioner's claims of error in sentencing. Because the only legal theories

---

[7] Petitioner cited the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005), in his brief on direct appeal to the Ohio Court of Appeals, and also referred to the state supreme court's decision in *State v. Foster,* 845 N.E.2d 470 (Ohio 2006), in his memorandum in support of jurisdiction to the Supreme Court of Ohio. (*See* Doc. 62, Ex. 17, p. 7; Ex. 74, p. 4). However, he did not rely on those decisions to argue that his Sixth Amendment jury trial right was violated at sentencing; rather, he cited the cases as support for his arguments that his sentence was subject to reversal because it was not "reasonable" and that the state courts improperly relied on *Foster* to "get[] away with" imposing seven-year mandatory prison sentences for "first time felony offender[s]." (*See id.*).

presented on appeal were predicated entirely on state law, that court was not placed on notice of any constitutional claim. *See Franklin,* 811 F.2d at 326; *cf. Petrucelli,* 735 F.2d at 688-90. The court, therefore, addressed the sentencing issues as argued by petitioner, solely in terms of state law, and overruled petitioner's assignments of error based on its state-law determinations that the trial court (1) "did not abuse its discretion" and complied with state statutory requirements in imposing sentences "within the applicable statutory range" on both the OVI charge and attached specification; and (2) correctly sentenced petitioner to a prison term as a "first-time felony offender" because he was "found guilty of a specification under R.C. 2941.1413." (*See id.*, Ex. 72, pp. 2-3).

By thus failing to fairly present the federal constitutional claim alleged in Ground One to the Ohio courts, petitioner committed a procedural default. He, therefore, has waived the claim for purposes of federal habeas corpus review unless he establishes cause for the default and actual prejudice as a result of the alleged error, or demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not provided any justification as "cause" for his procedural default. He also has not shown that failure to consider his claim of error in sentencing will result in a "fundamental miscarriage of justice," or in other words, that the alleged error "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995)

Accordingly, in sum, petitioner is not entitled to habeas relief based on the claim alleged in Ground One of the petition challenging the seven-year prison sentence imposed on his conviction for a fourth-degree felony OVI offense and accompanying specification. To the extent petitioner alleges violations of state law that were determined against him by the state courts, his claim is not cognizable in this federal habeas proceeding. Moreover, to the extent petitioner alleges a violation of his federal constitutional rights, the claim is waived because petitioner never raised such a claim to the state courts.

### B. Petitioner Is Not Entitled To Relief Based On The Sole Ineffective Assistance Of Trial Counsel Claim Alleged In Ground Two Of The Petition That Is Not Waived And Thus Subject To Review On The Merits

In Ground Two of the petition, petitioner claims that his trial counsel was ineffective based on numerous instances of allegedly deficient conduct during the trial proceedings. (Doc. 11, pp. 7-8 & Attachment). Respondent contends in the return of writ, however, that petitioner has waived all but one of these claims due to his procedural defaults in the state courts. (Doc. 62, Brief, pp. 18-21). Respondent further argues that petitioner is not entitled to relief based on the merits of the sole undefaulted claim that is subject to review herein. (*Id.,* pp. 21-23).

As discussed above, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

If the petitioner fails to fairly present a claim through the requisite levels of state appellate review to the state's highest court or commits some other procedural default relied on to preclude review of the merits of such claim by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for him to continue to pursue the claim in the state courts, his claim for habeas corpus relief is subject to dismissal with prejudice on the ground that it is waived. *See O'Sullivan,* 526 U.S. at 847-848; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

In this case, as respondent has argued, petitioner procedurally defaulted all but one of his ineffective assistance of trial counsel claims.

First, some of the alleged claims of error by counsel were not presented at all on direct appeal.

Second, although petitioner asserted five instances of ineffectiveness on the part of counsel on direct appeal to the Ohio Court of Appeals, as well as additional instances of ineffectiveness on further appeal to the Supreme Court of Ohio, he

committed procedural defaults by: (1) abandoning claims on appeal to the state supreme court that had been raised to the Ohio Court of Appeals; and (2) failing to first raise on direct appeal to the Ohio Court of Appeals the additional claims that were presented on further appeal to the state supreme court.[8]  (*See* Doc. 62, Brief, pp. 19-20; Ex. 17, pp. 10-12; Ex. 74, p. 4).

Finally, petitioner procedurally defaulted any ineffective assistance of trial counsel claims that were raised by him in pleadings filed in the state post-conviction and habeas proceedings.  Petitioner did not provide the Supreme Court of Ohio with the opportunity to address any such claims, because (1) he did not pursue appeals to the state supreme court from the Ohio Court of Appeals' decisions dismissing his state habeas petitions (*see id.,* Exs. 68-71); (2) he did not pursue an appeal to the state supreme court from the Ohio Court of Appeals' May 12, 2008 decision affirming the trial court's September 4, 2007 decision denying all but one of petitioner's post-conviction claims on state procedural *res judicata* grounds (*see id.,* Exs. 44-46, 92); and (3) he did not pursue any appeal in the state courts from the trial court's final appealable order filed on May 21, 2008 denying post-conviction relief (*see id.,* Exs. 82-85, 89, 95).

Accordingly, because of his numerous procedural defaults in the state courts, petitioner has waived all but one of his ineffective assistance of trial counsel claims unless he establishes cause for his defaults and actual prejudice as a result of the alleged errors, or demonstrates that failure to consider his defaulted claims will result in a "fundamental miscarriage of justice."  *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

Petitioner has not provided any justification as "cause" for his procedural

---

[8]  Petitioner procedurally defaulted claims that were presented on appeal only to the Supreme Court of Ohio, because the the state supreme court lacked jurisdiction to entertain issues which were not raised or considered by the intermediate appellate court.  *See* Ohio Const. art. IV, § 2(B)(2); *State v. Williams,* 364 N.E.2d 1364, 1367 (Ohio 1977) (and cases cited therein), *vacated on other grounds,* 438 U.S. 911 (1978); *State v. Phillips,* 272 N.E.2d 347, 352 (Ohio 1971); *State v. Jones,* 211 N.E.2d 198, 199 (Ohio 1965), *cert. denied,* 383 U.S. 918, 951 (1966); *see also Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982), *cert. denied,* 460 U.S. 1042 (1983); *Rios v. Baker,* 51 F.3d 273 (table), No. 94-3892, 1995 WL 118972, at *1 (6th Cir. Mar. 20, 1995) (unpublished); *Dixon v. Hudson,* No. 1:05cv2499, 2008 WL 540905, at *7 (N.D. Ohio Feb. 25, 2008) (unpublished).

defaults. He also has not shown that failure to consider his defaulted claims of constitutional error on the part of his trial counsel will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).

Petitioner has argued in the petition and his reply to the return of writ that he is actually innocent of the criminal charges. However, to establish a claim of actual innocence for the purpose of overcoming a procedural bar to habeas review, petitioner "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" based on "new reliable evidence ... that was not presented at trial." *Schlup,* 513 U.S. at 324, 327. The exception is "rare" and is to be applied only in the "extraordinary case," where the "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine the confidence in the result of the trial." *Id.* at 317, 321.

Petitioner has made no such showing in this case. Petitioner has not presented any evidence to support his self-serving statements accusing the prosecutor and other state officials of engaging in fraud and the presentation of perjured testimony at his trial. Moreover, although petitioner has alleged that the evidence presented at trial was insufficient to establish his guilt for the OVI offense and specification, establishing a colorable claim of actual innocence requires a showing of factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998); *Hampton v. United States,* 191 F.3d 695, 703 (6th Cir. 1999); *see also Dixon v. Hudson,* No. 1:05cv2499, 2008 WL 540905, at *7 (N.D. Ohio Feb. 25, 2008) (unpublished).

Therefore, the only ineffective assistance of counsel allegation subject to review on the merits is petitioner's claim, which was raised on direct appeal to both the Ohio Court of Appeals and Supreme Court of Ohio, that his attorney was ineffective in failing to object to the trial judge's order directing counsel for both parties to limit their closing arguments to five minutes so that she could attend a party. (*See* Doc. 62, Ex. 17, pp. 11-12; Ex. 74, p. 4). The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing this claim. Specifically, the court overruled the claim of error "on the basis of *Strickland v. Washington* (1984), 466 U.S. 668," because "the judge's statements and reasons for limiting the length of oral argument were made out of the presence of the jury during a sidebar conference which resulted in no prejudice." (*See id.,* Ex. 72, p. 3).

In the usual case, a federal habeas petitioner is not entitled to relief unless the state court's adjudication of his constitutional claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942. An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court

decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

As the Ohio Court of Appeals recognized in the instant case, petitioner's ineffective assistance of counsel claim is subject to review under the two-part standard established by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). To establish entitlement to relief under *Strickland*, petitioner must demonstrate both (1) his attorney made such serious errors that he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense. *See Strickland,* 466 U.S. at 687.

Under the first prong of the *Strickland* test, petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. Judicial scrutiny must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time the conduct occurred. *Id.* at 689. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that the challenged conduct fell within the wide range of reasonable professional assistance. *Id.*

To satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the trial's outcome would have been different. *See id.* at 694. Petitioner has met his burden if he shows that the result of the trial would "reasonably likely have been different absent the errors." *Id.* at 695.

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *Id*. at 697.

Here, the record reveals that at the close of the presentation of evidence at 11:25 a.m., a sidebar conference was held "outside the hearing of the jury" where the trial judge expressed that "[w]e are in a time crunch" because she had to attend a judges' meeting later that day followed by a retirement party for a judge retiring from the bench. (*See* Doc. 62, Trial Tr., Vol. II, Tr. 185-86). Because it also was

close to the time for the jury's lunch break, the judge and counsel discussed how best to proceed with closing arguments and final instructions to the jury.

Defense counsel was the one who suggested as a way of alleviating the "time crunch" that closing arguments be limited to ten minutes. (*Id.,* Tr. 186). The prosecutor immediately approved of this suggestion, and a colloquy ensued which resulted in the agreement between counsel and the judge to limit closing arguments to ten minutes so that both counsels' arguments and the jury instructions could be given before the lunch break. (*Id.,* Tr. 186-87).

Upon review of the record, the undersigned concludes that it was neither unreasonable nor prejudicial for defense counsel to suggest and agree to limiting closing arguments to ten minutes in light of the trial judge's schedule, so that both counsels' arguments and the jury instructions could be given before the lunch break. Defense counsel was provided ample opportunity to effectively argue his client's position during the ten minutes that were afforded him for closing argument. (*See id.,* Tr. 196-202). No showing has been made that the time limitation resulted in any prejudice to the defense or otherwise negatively impacted the jury's verdict. In addition, as the Ohio Court of Appeals reasonably determined, the jurors could not have been prejudiced by anything that was said at the sidebar conference held outside their hearing.

Accordingly, in sum, petitioner has waived all except one of the ineffective assistance of trial counsel claims that are alleged in Ground Two of the petition due to his procedural defaults in the state courts. Petitioner is not entitled to habeas relief based on the one remaining claim challenging counsel's agreement to a time limitation that was placed on closing arguments, because the claim lacks merit.

### C.  Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground Three Challenging The Sufficiency Of Evidence

In Ground Three of the petition, petitioner alleges that the evidence was insufficient to support his convictions. (Doc. 11, p. 9 & Attachment, p. 7).[9]

---

[9] To the extent petitioner also alleges in this ground for relief that the jury's verdicts of guilt are against the manifest weight of the evidence, he raises an issue of state-law only that is not cognizable in this federal habeas proceeding. *See Tibbs v. Florida*, 457 U.S. 31, 41-47

Petitioner raised this claim on direct appeal to both the Ohio Court of Appeals and Supreme Court of Ohio. (*See* Doc. 62, Exs. 17, 74). The claim, which was summarily rejected by the state courts (*see id.*, Ex. 72, p. 2; Ex. 81), is subject to review on the merits.

The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). In determining whether or not the evidence presented at trial was sufficient to satisfy this due process standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original).

This standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, under this standard, the reviewing court "faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983).

It is the jury's responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the trier of fact which convicted the petitioner. *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (*per curiam*), *cert. denied,* 490 U.S. 1049 (1989).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)). Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of

---

(1982); *State v. Thompkins,* 678 N.E.2d 541, 546-48 (Ohio 1997); *see also* 28 U.S.C. § 2254(a); *Estelle,* 502 U.S. at 67-68; *Pulley,* 465 U.S. at 41 (1984); *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir.), *cert. denied,* 540 U.S. 930 (2003).

guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Id.* at 796-97 (and Sixth Circuit cases cited therein); *see also United States v. Slewa,* No. 06-20519, 2008 WL 5244353, at *6 (E.D. Mich. Dec. 16, 2008) (unpublished).

Here, the undersigned concludes that sufficient evidence was presented at trial to support the jury's verdicts of guilt. State Highway Patrol Trooper Brian Bost testified that in the early morning of February 11, 2006, he was stationed in a "median crossover" at "mile post 25" on interstate I-75 and noticed a vehicle on the northbound side of the highway which "appeared to be traveling above the posted 65 miles an hour speed limit." (Doc. 62, Trial Tr. 25-29). Bost estimated that the vehicle was traveling at a speed of 80 miles per hour. (*Id.,* Tr. 29).

Bost had an electronic speed detection device in his cruiser, which he had calibrated when he began his shift to ensure it was operating properly. (*Id.,* Tr. 29-30). Bost used the laser device to check the speed of the vehicle and obtained four readings from it, which showed the vehicle was traveling, respectively, at the speeds of 84, 82, 81 and 80 miles per hour. (*Id.,* Tr. 31-32). When the vehicle passed him, Bost observed that the driver was male. (*Id.,* Tr. 32-33). Bost then pulled out onto the highway; he activated the "overhead lights" and eventually the siren on his cruiser to initiate a traffic stop of the vehicle. (*Id.,* Tr. 33-35).

The driver pulled over one and one-half to two miles later in a rest area near "mile post 27." (*Id.,* Tr. 36). Bost testified: "When I was putting my car into park, I noticed the driver of the vehicle, a male wearing a white hat, get up out of his seat and hop over the passenger front seat and exit through the passenger front door." (*Id.,* Tr. 38-39). Bost identified petitioner as the driver of the car. (*Id.*, Tr. 41-42).

Bost, who had "received training in the apprehension and detection of individuals who are under the influence of alcohol," and specifically "in discerning or smelling ... alcohol that emanates from an individual," noticed a "[s]trong odor of alcoholic beverage about [petitioner's] breath;" Bost further testified that petitioner's "[s]peech was slowed and slurred at times to the point where I could not understand what he was saying. He was unable to articulate what he was saying. He had bloodshot, glassy eyes as well." (*Id.,* Tr. 44-46).

At that point, Bost asked petitioner to perform field sobriety tests, which petitioner refused to do. (*Id.,* Tr. 46). Bost concluded from his observations of petitioner that petitioner "was appreciably impaired to operate a motor vehicle;" petitioner was arrested for "operating a vehicle under the influence," and taken to the Butler County jail where he refused to submit to a breathalyzer test. (*Id.,* Tr. 47, 49-50).

Bost testified that he "confirmed that the defendant was under suspended license." (*Id.,* Tr. 51). Indeed, petitioner conceded during his testimony that he was the driver of the vehicle and that his license was suspended at the time. (*Id.,* Tr. 51, 118, 121). Petitioner testified that he exited the vehicle on the passenger side and persisted in telling the trooper that he was not the driver because he was scared and "didn't want to get the driving under suspension ticket for no operator's license." (*Id.,* Tr. 124). A certified copy of petitioner's Ohio Bureau of Motor Vehicles driving record, which was introduced without objection into evidence as State's Exhibit 12, showed that petitioner's license was suspended at that time for an OVI offense. (*Id.,* Tr. 82-83, 133-34).

The State introduced seven judgment entries identified as State's Exhibits 4 through 10 as evidence of petitioner's prior OVI convictions in Franklin, Miamisburg, and Middleton Municipal Courts. (*See id.,* Tr. 71-82). Although defense counsel objected to the admission of five of these entries, the court overruled counsel's objections and allowed all seven judgment entries into evidence. (*See id.,* Tr. 73-81, 108-16). In addition, petitioner testified that he did not have "a very good driving record," which included "numerous DUIs." (*Id.,* Tr. 117-18). Petitioner specifically recalled his "last three DUI tickets," which he claimed he received when he was in his driveway; and DUI citations that he received while driving on August 15, 2003 in Miamisburg and in May of June of 2001 in Middletown; and DUI tickets issued in the spring of 1990 and 1991. (*Id.,* Tr. 145-48).

Viewing all this evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that petitioner was guilty of violating the speed limits law and driving under OVI suspension. *See* Ohio Rev. Code §§ 4510.14(A) and 4511.21. In addition, a rational juror could have found petitioner guilty beyond a reasonable doubt of the charged OVI offense under Ohio Rev. Code § 4511.19(A)(1)(a) and the attached specification that "within twenty years of committing the offense, the offender previously has been convicted of or pleaded guilty to five or more equivalent offenses."

Petitioner claims that Bost is "a liar" and that the State's case was based on "fabricated evidence." However, it was the jury's responsibility to resolve the conflicts in testimony and to assess the credibility and weight to be accorded the various witnesses' testimony. *See Jackson,* 443 U.S. at 319. Moreover, as discussed below in addressing petitioner's claims of prosecutorial misconduct alleged in Ground Four of the petition, petitioner has presented no evidence to substantiate his self-serving contention that the State fabricated any of the evidence that was presented at trial, including the certified judgment entries of petitioner's prior OVI convictions.

Accordingly, in sum, the undersigned concludes that there was enough evidence presented by the prosecution to support the reasonable inference that petitioner was guilty of the charged fourth-degree-felony OVI offense and attached specification, as well as of the speed limits offense and of driving under an OVI suspension. Petitioner, therefore, is not entitled to relief based on the claim alleged in Ground Three of the petition challenging the sufficiency of evidence supporting his convictions.

### D.  The Prosecutorial Misconduct Claims Alleged In Ground Four Of The Petition Either Are Either Waived Or Lack Merit

In Ground Four of the petition, petitioner claims that he was denied a fair trial as a result of numerous alleged acts of misconduct by the prosecutor during the trial proceedings. (Doc. 11, pp. 10-11 & Attachment, pp. 8-10). Respondent contends in the return of writ that petitioner is not entitled to habeas relief, because (1) petitioner has waived most of the alleged claims of prosecutorial misconduct due to his procedural defaults in the state courts, and (2) his remaining undefaulted claims lack merit. (Doc. 62, Brief, pp. 28-31).

As respondent has argued, the following claims were the only allegations of prosecutorial misconduct that petitioner pursued through the requisite levels of state appellate review to the state's highest court: his claims that the prosecutor tampered with evidence by altering the judgment entries for his prior OVI convictions and by calling state trooper Brian Bost "back to the stand" as a rebuttal witness to give perjured testimony about the marijuana that was found under the rear seat of Bost's cruiser upon inspection of the cruiser after petitioner was transported in it to jail. (*See* Doc. 62, Ex. 17, p. 14; Ex. 74, p. 6).

As discussed above, *see supra* pp. 13-15, petitioner procedurally defaulted all other prosecutorial misconduct claims because he did not fairly present them to the Supreme Court of Ohio for consideration either by failing to allege them at all or by failing to raise them in an appeal to the state supreme court.  In the absence of a showing of "cause" for his defaults, or that failure to consider any of the defaulted claims will result in a "fundamental miscarriage of justice," these claims are barred from review as waived.

Turning next to the two claims of evidence-tampering subject to review on the merits, the Ohio Court of Appeals summarily held that "[t]here is nothing in the record to show prosecutorial misconduct regarding ... tampering with evidence or exhibits, or depriving appellant of a fair trial."  (Doc. 62, Ex. 72, p. 3).  The undersigned agrees with this determination.

Petitioner first claims that the prosecutor altered the seven judgment entries, which were introduced at trial as evidence of his prior OVI convictions.  The record belies this allegation.

At trial, defense counsel did not lodge any objection to the admission of two judgment entries obtained from Franklin Municipal Court, and petitioner has submitted no evidence even remotely suggesting that there were any problems with those entries.  Defense counsel did object to one judgment entry submitted by the Miamisburg Municipal Court, but only on the grounds that it was "marked as traffic docket entry" and the information contained in it to establish petitioner's identity was inadequate under state law.  (*See* Doc. 62, Trial Tr. 73, 75).  Counsel did not argue, nor has petitioner presented any evidence to suggest, that this judgment entry was altered in any way by the prosecutor or an officer of the court.

Counsel also objected to four other certified judgment entries from the Middletown Municipal Court on grounds that the entries were not filed-stamped and it appeared that petitioner's social security number and date of birth were not on the original tickets but were added later.  (*See id.,* Tr. 76-77, 108-09).  In lodging the objection, defense counsel stated that he was "in no way insinuating that the prosecutor's office did anything wrong." (*See id.,* Tr. 79).  Although defense counsel went on to state that he believed the prosecutor supplied the Middletown clerk of court with petitioner's name, date of birth and social security number, the prosecutor immediately responded:

Absolutely not, Judge. And I take offense at counsel insinuating that I called the clerk of courts in Middletown Municipal Court, provided them with the information. I will tell the court exactly my conversation with ... the chief deputy clerk of that court. My conversation with her was, ... my judgment entries do not have personal identifying information on [them]. Can you provide me with a judgment entry of conviction certified with that information on it? And ... I was advised she could do so.

(*Id.*).

The trial court overruled defense counsel's objection to the Miamisburg Municipal Court judgment entry, after the prosecutor pointed out that the entry was signed by a judge and stamped with "penal sanctions noted" and contained petitioner's name and address, which was sufficient under state law to establish petitioner's identity. (*See id.*, Tr. 73-76). Moreover, in overruling counsel's objections to the Middletown Municipal Court judgment entries, the court acknowledged that, as the prosecutor had argued, "frequently, out of different courts, ... the lower courts do not prepare a journal entry in every single [misdemeanor traffic offense] case," and instead will prepare a judgment entry "like this only upon a request for evidence." (*Id.*, 78, 82). The prosecutor emphasized that the clerk of the Middletown Municipal Court expressly certified that each entry provided in response to the State's request for evidence in the instant case contained "true and accurate" information regarding the identity of the defendant, as well as "what occurred in that court." (*Id.,* Tr. 77-78, 80).

As respondent has argued (*see* Doc. 62, Brief, p. 30), petitioner has not shown that the prosecutor engaged in any impropriety in obtaining the judgment entries that were introduced at trial as evidence of petitioner's prior OVI convictions. Nor does the record support petitioner's contention that the prosecutor altered any of those judgment entries or, perhaps even more importantly, that the information contained in any of the judgment entries is inaccurate. Indeed, although he was unable to recall one of the citations issued in the fall of 1991 in Middletown, petitioner conceded at trial that he was "cited for DUI in Middletown" on three separate occasions and that his social security number was the number reflected on the Middletown Municipal Court judgment entries. (*See id.,* Tr. 147-48).

Second, petitioner claims that the prosecutor recalled state trooper Brian Bost to the witness stand as a rebuttal witness to give perjured testimony about a baggie of marijuana that was found in his cruiser after petitioner was transported in it to jail. There is simply no evidence in the record to support this claim.

Bost was called to testify about the marijuana found in the cruiser only after petitioner brought up the matter himself by volunteering during his cross-examination about another matter that the marijuana possession charge was dropped "because you knew that was a bunch of crap, obviously." (*See id.,* Tr. 166-67, 176). The prosecutor explained at a sidebar conference held outside the hearing of the jury that the issue needed to be addressed on rebuttal because petitioner's suggestion from the stand that the marijuana possession charge was fabricated might lead the jury to believe that "maybe they got the wrong guy," and "I want the jury to know we don't have the marijuana because it is at a laboratory." (*Id.,* Tr. 177). The court overruled defense counsel's objection to this line of questioning on rebuttal, which the prosecutor limited to elicit only Bost's testimony that petitioner was charged with possession of marijuana that was found in "the rear floorboard of the cruiser" where petitioner was sitting; that the marijuana was submitted to the OSP Crime Lab in Columbus for analysis; and that the marijuana "is at the crime lab right now." (*Id.,* Tr. 178-80).

The undersigned has reviewed Bost's testimony at the suppression hearings held on three separate dates. Contrary to petitioner's contention, Bost's trial testimony was consistent with his testimony at the first hearing that "three grams of marijuana" were found "after the fact, after he [petitioner] had been incarcerated ... in the back floorboard of the cruiser where he [petitioner] was seated." (*See id.,* July 17, 2006 Suppression Hearing Tr. 33-34).

Accordingly, in sum, upon review of the entire record, the undersigned concludes that there is no merit to petitioner's claims of evidence-tampering by the prosecutor. Because petitioner failed to provide the Supreme Court of Ohio with the opportunity to consider any other prosecutorial misconduct claims, his remaining claims of misconduct alleged in Ground Four of the petition are waived.

### E. Petitioner Is Not Entitled To Relief Based On His Claim Of Actual Innocence Alleged In Ground Five, Which Is Not Cognizable As A Free-Standing Claim And Is Insufficient To Overcome Any Procedural Bar To

**Review Of Other Defaulted Claims Of Constitutional Trial Error**

In Ground Five of the petition, petitioner essentially alleges that he is entitled to habeas relief because he is actually innocent of the criminal charges. (Doc. 11, p. 14 & Attachment, p. 11). However, a freestanding "actual innocence" claim does not constitute a cognizable ground for habeas corpus relief in a non-capital case such as this. *See Herrera v. Collins,* 506 U.S. 390, 400-01 (1993); *Townsend v. Sain,* 372 U.S. 293, 317 (1963).[10]

In *Herrera,* the Supreme Court explained:

> This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution– not to correct errors of fact. . . .
>
> More recent authority construing federal habeas statutes speaks in a similar vein. "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle,* [463 U.S. 880, 887 (1983)]. The guilt or innocence determination in state criminal trials is "a decisive and portentous event." *Wainwright v. Sykes,* [433 U.S. 72, 90 (1977)]. "Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens." *Ibid.* Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence.

*Herrera,* 506 U.S. at 400-01. *Cf. Hall v. Grant,* 780 F.2d 1021 (table), No. 84-1531, 1985 WL 13926 (6th Cir. Nov. 20, 1985) (in a pre-*Herrera* case, the Sixth

---

[10] Three Justices concurring in the 6-3 majority opinion in *Herrera* indicated their concern about executing an individual who is actually innocent. *See Herrera,* 506 U.S. at 419-20 (O'Connor and Kennedy, JJ., concurring); *id.* at 429 (White, J., concurring). Therefore, it appears the Supreme Court in *Herrera* "left the door open a tiny crack," *Stafford v. Saffle,* 34 F.3d 1557, 1561 (10th Cir. 1994), *cert. denied,* 514 U.S. 1099 (1995), for the adjudication of freestanding actual innocence claims in capital cases, where "a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and ... there [is] no state avenue open to process such a claim." *See Herrera,* 506 U.S. at 417. In a more recent decision, the Supreme Court declined to resolve this issue "left open in *Herrera.*" *House v. Bell,* 547 U.S. 518, 554-55 (2006).

Circuit relied on *Townsend* to reach the same conclusion as the Court in *Herrera*), *cert. denied,* 475 U.S. 1142 (1986); *Drake v. Francis,* 727 F.2d 990, 993-94 (11th Cir. 1984) (same in Eleventh Circuit).

In *Herrera,* the Supreme Court distinguished freestanding actual innocence claims from claims of actual innocence asserted to overcome procedural bars to federal habeas corpus review of other defaulted claims of constitutional trial error. *Herrera,* 506 U.S. at 404-05 (citing *Sawyer v. Whitley,* 505 U.S. 333 (1992), and *McCleskey v. Zant,* 499 U.S. 467 (1991)). The Court stated: "[T]h[e] body of habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 404.

As discussed earlier, to establish a claim of actual innocence for the purpose of overcoming a procedural bar to habeas review, the petitioner "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" based on "new reliable evidence ... that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995). The exception is "rare" and is to be applied only in the "extraordinary case," where the "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine the confidence in the result of the trial." *Id.* at 317, 321.

Petitioner has made no such showing in this case. Petitioner has not presented any new facts to raise sufficient doubt about his guilt; nor has petitioner presented any evidence to support his self-serving statements accusing the prosecutor and other state officials of engaging in fraud and the presentation of perjured testimony at his trial. The undersigned has determined that the evidence presented at trial was sufficient to establish petitioner's guilt on the various charges. In any event, establishing a colorable claim of actual innocence requires a showing of factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998); *Hampton v. United States,* 191 F.3d 695, 703 (6th Cir. 1999); *see also Dixon v. Hudson,* No. 1:05cv2499, 2008 WL 540905, at *7 (N.D. Ohio Feb. 25, 2008) (unpublished).

Accordingly, in sum, petitioner is not entitled to relief based on his "actual innocence" claim alleged in Ground Five of the petition. The claim is not cognizable as a free-standing ground for habeas relief, and petitioner has not

established a colorable "actual innocence" claim for the purpose of overcoming a procedural bar to review of any of his other defaulted grounds for relief.

**F.  Petitioner Is Not Entitled To Relief Based On The Conclusory Claim Alleged In Ground Six Challenging The Driving Under Suspension Charge**

In Ground Six of the petition, petitioner generally contends that the "driving under suspension charge was unconstitutional" under the Constitution's Double Jeopardy, Due Process and Equal Protection Clauses.  (Doc. 11, p. 14 & Attachment, p. 12).

Respondent argues that petitioner has waived this claim because he never raised it in the state courts.  (*See* Doc. 62, Brief, p. 28).  In any event, petitioner has not alleged any facts as support for the claim; nor does a review of the record reveal that there is a factual basis for this claim.  As discussed above, the evidence presented at trial was sufficient to establish beyond a reasonable doubt petitioner's guilt on the charge.

Because petitioner's allegations are simply too conclusory and vague to state a colorable constitutional claim, petitioner is not entitled to relief based on the otherwise procedurally-defaulted claim alleged in Ground Six of the petition.

**F.  Petitioner Is Not Entitled To Relief Based On His Claims Alleged In Ground Seven Challenging The Indictment**

In Ground Seven of the petition, petitioner alleges that the indictment was "fatally flawed" because (1) the marijuana possession count that was later dismissed was never deleted from the indictment, and (2) the indictment failed to a charge a "multi felony offender specification."  (Doc. 11, p. 14 & Attachment, p. 13).

Respondent argues in the return of writ that petitioner has waived these claims, which were procedurally-defaulted in the state courts.  (*See* Doc. 62, Brief, p. 31).  In any event, the allegations of error, which involve the manner by which the accused is charged with a crime, do not give rise to a federal constitutional claim.

It is well-settled that there is not even a federal constitutional right to an

indictment in state criminal proceedings. *Hurtado v. California,* 110 U.S. 516, 537-38 (1884); *see also Branzburg v. Hayes,* 408 U.S. 665, 688 n.25 (1972); *Koontz v. Glossa,* 731 F.2d 365, 369 (6th Cir. 1984) ("The law is well settled that the federal guarantee of a grand jury indictment has not been applied to the states.... It is also well settled in this Circuit that the Constitution does not require any particular state indictment rule."); *Watson v. Jago,* 558 F.2d 330, 337 (6th Cir. 1977). As long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz,* 731 F.2d at 369; *Watson,* 558 F.2d at 338.

Here, petitioner does not allege that the indictment failed to provide sufficient notice to him of the charges against him. Nor is petitioner able to prevail on any such claim to the extent that the indictment was not amended to eliminate the marijuana possession count. Petitioner and his counsel were well aware of the dismissal of that charge entered the first day of trial, and petitioner has not demonstrated any prejudice to his case because the indictment was not amended to reflect that the charge was dismissed.

Moreover, petitioner is unable to prevail on any claim that the indictment failed to adequately inform him of the fourth-degree-felony OVI charge and attached specification. Specifically, the indictment provided in pertinent part:

> On or about February 11, 2006, at Butler County, Ohio, Robert T. Harsh did operate any vehicle ... within this state while under the influence of alcohol, a drug of abuse, or a combination of them, when the offender, within six years of the offense, has been previously convicted of or pleaded guilty to three or four violations of division (A) or (B) of O.R.C. section 4511.19 or other equivalent offenses or who within twenty years of the offense, previously has been convicted of or pleaded guilty to five or more violations of that nature, which constitutes the offense of OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE, a Fourth Degree Felony, in violation of R.C. §4511.19(A)(1)(a)....

> SPECIFICATION. The Grand Jurors further find and specify that within twenty years of committing the offense, the offender previously has been convicted of or pleaded guilty to five or more equivalent offenses.

(Doc. 62, Ex. 1).

The indictment was sufficient to place petitioner on notice that he was charged with operating a vehicle on or about February 11, 2006 while under the influence, which was elevated to a fourth-degree-felony offense by the aggravating elements of five or more prior convictions under Ohio Rev. Code §4511.19(A) or (B) or an equivalent offense within twenty years of the charged offense. Contrary to petitioner's contention, the applicable criminal statutes do not prohibit the use of petitioner's prior convictions for misdemeanor, as opposed to felony, OVI offenses. *See* Ohio Rev. Code Section 2941.1413 and Section 4511.19(G)(1)(d)(i). Therefore, petitioner had sufficient notice to adequately prepare a defense, and there was no error in the indictment with respect to the OVI count with specification.

Accordingly, because petitioner was provided sufficient notice of the charges against him in this case, he is not entitled to habeas corpus relief based on the merits of the otherwise defaulted claims alleged in Ground Seven challenging the validity of the indictment.

### G. Petitioner's Fourth Amendment Claim Alleged In Ground Eight Is Not Subject To Review In This Federal Habeas Proceeding

In Ground Eight of the petition, petitioner alleges that his Fourth Amendment rights were violated when, while driving on a highway "with flow of traffic doing the speed limit," he was pulled over by a state trooper and arrested without probable cause or a warrant. (Doc. 11, p. 14 & Attachment, pp. 14-17). Petitioner claims that Ohio state trooper, Brian Bost, who was the "only witness for the State," gave perjured testimony about the stop of petitioner's vehicle for speeding based on readings obtained from a hand-held laser; petitioner's subsequent arrest for operating a motor vehicle while under the influence of alcohol or drugs; and the "small baggie of marijuana" discovered in Bost's cruiser after petitioner was transported in it to jail. (*Id.*).

In response, respondent contends in the return of writ that the Supreme Court's decision in *Stone v. Powell,* 428 U.S. 465, 494-95 (1976), precludes federal habeas review of this ground for relief. (Doc. 62, Brief, pp. 33-34). As respondent has argued, federal habeas courts are prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the petitioner had

a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone*, 428 U.S. at 494-95.

To determine whether the petitioner's claim is subject to review, a federal habeas corpus court must make two distinct inquiries: (1) whether the State has provided a procedural mechanism through which, in the abstract, petitioner could raise a Fourth Amendment claim; and (2) whether petitioner's presentation of the claim was in fact frustrated because of a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir.), *cert. denied*, 459 U.S. 948 (1982); *see also Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000), *cert. denied,* 531 U.S. 1089 (2001).

Ohio provides an adequate procedural mechanism for the litigation of Fourth Amendment claims in the form of a pretrial motion to suppress pursuant to Ohio R. Crim. P. 12, and a direct appeal as of right from an order denying a motion to suppress pursuant to Ohio R. App. P. 3 and 5. Discretionary review by the Supreme Court of Ohio is not an additional requirement for ensuring full and fair litigation of a Fourth Amendment claim in Ohio. Therefore, under the first inquiry, Ohio's mechanism for the resolution of Fourth Amendment claims, in the abstract, presents the opportunity to raise such claims. *Id.*

Under the second inquiry, petitioner has not shown that there was a failure of the State's procedural mechanism which frustrated the presentation of his Fourth Amendment claim in the Ohio courts. Petitioner presented his Fourth Amendment claim to the trial court by way of a suppression motion. (*See* Doc. 62, Exs. 2-3 & Suppression Hearing Transcripts). He also challenged the trial court's denial of his motion to suppress on direct appeal to the Ohio Court of Appeals and further appeal to the Supreme Court of Ohio. (*See id.,* Exs. 17, 74).

Before ruling on petitioner's suppression motion, the trial court held a series of hearings over the course of three days on July 17, December 18, and December 21, 2006, where Brian Bost was questioned extensively by both the prosecutor and defense counsel. At the hearings, the trial court was given ample opportunity to observe Bost's demeanor and assess the credibility of his testimony. (*Id.*, Suppression Hearing Transcripts). Moreover, on direct appeal, petitioner was provided the opportunity to raise arguments challenging the trial court's denial of the motion to suppress.

In this case, the record reflects that petitioner was able to present his Fourth Amendment claim to the Ohio courts and that the claim was carefully considered and rejected at the trial level in a written entry detailing the substance of Bost's testimony elicited during his extensive questioning at the suppression hearings. (*See id.* & Ex. 3). Petitioner challenged the trial court's ruling in an assignment of error on direct appeal, which the Ohio Court of Appeals considered and overruled on the ground that "[t]here was sufficient probable cause for the traffic stop and subsequent OVI arrest based on the state trooper's visual observation of appellant's speed, ... and the trooper's observation of indicia of impairment and intoxication following the stop." (*Id.,* Ex. 72, pp. 1-2). Petitioner asserted the claim on further appeal to the Supreme Court of Ohio, but that court declined jurisdiction to hear the case and dismissed the appeal, presumably because it was not persuaded by petitioner's memorandum in support of jurisdiction that the claim merited further consideration. (*Id.,* Exs. 74, 81).

Under 28 U.S.C. § 2254(e)(1), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Upon review of the transcripts of the suppression hearing, the trial court's reasoned decision denying the motion to suppress, and the Ohio Court of Appeals' decision affirming the trial court's judgment, the undersigned concludes that there is sufficient evidence in the record, which has not been rebutted by "clear and convincing evidence" to the contrary, to support the state courts' findings that there was probable cause for the initial traffic stop based on petitioner's observed violation of the posted speed limit, as well as for petitioner's subsequent OVI arrest based on Bost's observations of petitioner following the stop.

Accordingly, in sum, the undersigned concludes that the Fourth Amendment claim alleged in Ground Eight of the petition, challenging the denial of petitioner's pretrial suppression motion, is barred from review under the Supreme Court's *Stone* decision. Federal habeas review of the claim is prohibited because petitioner had a full and fair opportunity to litigate it in the state courts, and presentation of the claim was not thwarted by any failure of the State's corrective process. *Cf. Stone*, 428 U.S. at 494-95.

### H. Petitioner Is Not Entitled To Relief Based On His

**Claim Of Judicial Misconduct Alleged In Ground Nine**

In Ground Nine of the petition, petitioner contends that the trial judge engaged in misconduct, which deprived petitioner of his due process right to a fundamentally fair trial. (Doc. 11, p. 14 & Attachment, pp. 18-20).

This claim, which was raised by petitioner on appeal to both the Ohio Court of Appeals and Supreme Court of Ohio (*see* Doc. 62, Exs. 17, 74), is subject to review on the merits. The Ohio Court of Appeals, which was the only state court to address the judicial misconduct claim on the merits, summarily overruled the assignment of error on the ground that "there is no compelling evidence to rebut the presumption of the trial judge's disinterestedness." (*See id.*, Ex. 72, p. 4).

It is well-settled that the Due Process Clause requires "a fair trial in a fair tribunal," *Withrow v. Larkin,* 421 U.S. 35, 46 (1975), "before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley,* 520 U.S. 899, 905 (1997) (citing *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 821-22 (1986), and *Tumey v. Ohio,* 273 U.S. 510, 523 (1927)). In a case such as this, where petitioner has not alleged, nor is there any evidence in the record to suggest, that the trial judge had an interest in the outcome of petitioner's trial, petitioner is not entitled to relief unless he can demonstrate actual bias or lack of impartiality on the part of the trial judge. *See Railey v. Webb,* 540 F.3d 393, 413 (6th Cir. 2008), *cert. denied,* 129 S.Ct. 2878 (2009).[11]

As the Ohio Court of Appeals apparently understood in the instant case, in order to establish a claim of judicial bias, the petitioner must overcome the presumption that the trial judge properly discharged his official duties. *See Johnson v. Warren,* 344 F.Supp.2d 1081, 1093 (E.D. Mich. 2004) (citing *Bracy*, 520 U.S. at 909); *see also Lavoie*, 475 U.S. at 820 ("the law will not suppose a possibility of bias or favour in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea").

---

[11] In *Railey*, the Sixth Circuit specified the two types of case where the Supreme Court "actually held that something less than actual bias violates constitutional due process–(1) those cases in which the judge 'has a direct, personal, pecuniary interest in reaching a [particular] conclusion,' ...; and (2) certain contempt cases, such as those in which the 'judge becomes personally embroiled with the contemnor.'" *Railey,* 540 F.3d at 400.

In the instant case, petitioner has alleged that the trial judge exhibited actual bias by making certain evidentiary rulings in the State's favor and against the defense. (*See* Doc. 11, Attachment, pp. 18-19). The Supreme Court addressed this type of claim in *Liteky v. United States,* 510 U.S. 540 (1994).[12]

The Supreme Court first pointed out that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," and instead, [a]lmost invariably are proper grounds for appeal, not recusal." *Liteky,* 510 U.S. at 555. In the absence of a showing of reliance upon an extrajudicial source, judicial rulings "can only in the rarest circumstances evidence the degree of favoritism or antagonism required" to implicate concerns about a judge's lack of impartiality. *Id.*

The Court continued:

[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. An example of the latter (and perhaps the former as well) is the statement alleged to have been made by [a] District Judge [in] a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty.".... *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what

---

[12] Although in *Liteky,* the Court's analysis was based on statutory standards for the recusal of federal judges, the Sixth Circuit has relied on the decision in assessing judicial-bias claims under the Due Process Clause. *See Lyell v. Renico,* 470 F.3d 1177, 1186 (6th Cir. 2006) (citing *Alley v. Bell,* 307 F.3d 380, 386 (6th Cir. 2002), *cert. denied,* 541 U.S. 963 (2004)).

imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune.

*Id.* at 555-56 (citation omitted) (emphasis in original).

In this case, as the Ohio Court of Appeals reasonably concluded, petitioner's allegations are insufficient to overcome the presumption that the trial judge properly discharged her official duties. Upon review of the record, the undersigned finds that none of the trial court's comments or rulings cited by petitioner as examples of judicial misconduct reflect the degree of favoritism or antagonism, found "only in the rarest circumstances," that is required to implicate concerns about the judge's "fair judgment." *See Liteky,* 510 U.S. at 555.

Specifically, the record belies petitioner's allegation that the judge engaged in misconduct by limiting counsels' closing arguments to five minutes and telling the jury that "they needed to hurry up and have a verdict and be out of the building by 5:00 p.m." so that she could attend a "big party." As discussed earlier, closing arguments were limited to ten minutes at the suggestion of petitioner's counsel, not the judge, as a solution to a legitimate "time crunch" that was created when the parties rested at 11:25 a.m., to ensure that both closing arguments and jury instructions could be given before the jury's lunch break, as well as to accommodate the judge's other pre-scheduled commitments later that afternoon. Moreover, contrary to petitioner's contention, when the court reconvened at 1:25 p.m. after the lunch break for final instructions prior to the jury's retiring for deliberations, the trial court did not instruct the jury that a final verdict had to be reached by 5:00 p.m. that day or, for that matter, within any specified time frame. (*See* Doc. 62, Trial Tr. 206-07). Finally, to the extent petitioner further suggests that the judge "lied to the jury" and allowed perjured testimony and fabricated evidence to be admitted at trial, there is simply no evidence in the record even remotely supporting such claims.

Accordingly, in sum, because neither petitioner's allegations nor the record reflect the degree of hostility or antagonism that is required to trigger any possible due process concerns about the trial judge's "fair judgment" in this case, petitioner is not entitled to habeas relief based on his claim of judicial misconduct alleged in Ground Nine of the petition. *Cf. Williams v. Anderson*, 460 F.3d 789, 814-15 (6th

Cir. 2006); *United States v. Lossia*, 193 Fed.Appx. 432, 437-38 (6th Cir. Aug. 22, 2006) (not published in Federal Reporter), *cert. denied,* 549 U.S. 1146 (2007); *Lewis v. Robinson,* 67 Fed.Appx. 914, 922-24 (6th Cir. June 20, 2003) (not published in Federal Reporter), *cert. denied,* 540 U.S. 1187 (2004).

## I. Petitioner Is Not Entitled to Relief Based on His Claim Alleged In Ground Ten Challenging The Propriety Of The Jury Verdict Forms

In Ground Ten of the petition, petitioner claims that he was denied due process because the jury verdict forms failed to comply with "statutory requirements for a felony conviction." (Doc. 11, Attachment, p. 21).

Respondent contends in the return of writ that petitioner raised this claim to the state courts as an issue of state-law only, which is not cognizable in this proceeding, and that therefore any cognizable federal due process claim must be deemed waived. (Doc. 62, Brief, p. 38). Respondent alternatively argues that the claim is meritless. (*Id.*).

As an initial matter, as discussed above, this Court is precluded from reviewing petitioner's claim to the extent petitioner alleges that he is entitled to relief due to error under Ohio law. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). Moreover, as respondent has contended, it appears that petitioner failed to fairly present the federal due process claim on direct appeal, but rather only argued to the Ohio Court of Appeals that under a state supreme court decision, he could not be convicted of a felony OVI offense because the jury verdict forms failed to comply with state statutory standards. (*See* Doc. 62, Ex. 17, pp. 3-4). Nevertheless, even assuming that petitioner had fairly presented the federal constitutional claim to the state courts, he is not entitled to habeas relief in this case.

The Ohio Court of Appeals, which was the only state court to address the state-law claim on the merits, overruled the assignment of error as follows: "The verdict forms contain the operative language of R.C. 4511.19(G)(1)(d) and contain sufficient language indicating that the aggravating element – five or more equivalent OVI offenses within the past 20 years – justified a conviction of a felony OVI offense." (*Id.,* Ex. 72, p. 1).

It is well-settled that federal habeas courts generally are bound by the state

court's interpretation of state law that was "announced on direct appeal of the challenged conviction." *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) (citing *Estelle,* 502 U.S. at 67-68, and *Mullaney v. Wilbur,* 421 U.S. 684, 691(1975)). "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237 (1940) (and cases cited therein); *see also Hampton v. United States,* 191 F.3d 695, 701 (6th Cir. 1999) (citing *Hicks v. Feiock,* 485 U.S. 624, 630 & n. 3 (1988)); *cf. Lawler v. Fireman's Fund Ins. Co.,* 322 F.3d 900, 903 (6th Cir. 2003).

The Supreme Court of Ohio held in *State v. Pelfrey,* 860 N.E.2d 735, 738 (Ohio 2007), that "a verdict from signed by a jury must include *either* the degree of the offense of which the defendant is convicted *or* a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense."

Here, the jury verdict forms did not specify the degree of the OVI offense charged against petitioner.  (*See* Doc. 62, Ex. 98).  However, the forms required the jury to find that petitioner was guilty of operating a motor vehicle under the influence on or about February 11, 2006, as well as the aggravating element that petitioner was convicted of driving under the influence in at least five of the seven listed prior municipal court cases docketed in 1990, 1991, 2001, 2003 and 2004. The Ohio Court of Appeals determined that these forms contained "sufficient language indicating that the aggravating element – five or more equivalent OVI offenses within the past 20 years – justified a conviction of a felony OVI offense." The undersigned is not convinced that the Supreme Court of Ohio would have decided the issue differently under its holding in *Pelfrey.*

Accordingly, in sum, the undersigned concludes that petitioner raised the claim alleged in Ground Ten of the petition to the state courts as an issue of state-law only, which is not cognizable in this proceeding, and that any cognizable federal due process claim must be deemed waived.  In any event, petitioner is not entitled to habeas relief based on the claim challenging the propriety of the jury verdict forms, because this Court is bound by the Ohio Court of Appeals' state-law determination that the jury verdict forms contained "sufficient language indicating that the aggravating element – five or more equivalent OVI offenses within the

past 20 years – justified a conviction of a felony OVI offense."

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 11) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural rulings.[13]

In addition, a certificate of appealability should not issue with respect to the Fourth Amendment claim alleged in Ground Eight of the petition, which is not cognizable under *Stone v. Powell,* 428 U.S. 465, 494-95 (1976), or with respect to any of petitioner's claims that were addressed on the merits herein; a certificate of appealability should not issue because petitioner has not shown that reasonable jurists could debate whether any such claims should have been resolved in a different manner or that the issues presented are "adequate to deserve encouragement to proceed further." *See Miller-El v. Cockrell,* 537 U.S. 322, 323-324 (2003) (quoting *Slack,* 529 U.S. at 483-84) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis* at the close of this case, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.

---

[13] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his procedurally-barred grounds for relief. *See Slack,* 529 U.S. at 484.

*See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:   _9/24/09_                    _s/Timothy S. Black_           
           cbc                         Timothy S. Black
                                    United States Magistrate Judge

Robert Harsh,
      Petitioner,

      vs.                            Case No. 1:08cv433
                                      (Beckwith, S.J.; Black, M.J.)

Warden, Chillicothe Correctional
Institution,
      Respondent.

# NOTICE

      Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action. Any party may object to the Magistrate Judge's Report and Recommendation **within 15 days** after the date the Report and Recommendation is stamped as "filed" by the Clerk of Court. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed **within 10 days** after the opposing party has been served with the objections. A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).